## Forsythe, Appellant, *v.* Philadelphia.

*Road law—Widening street—Damages—Dedication.*

Where a church moves back a wall so as to increase the width of its front pavement by six feet, and it appears from all the circumstances connected with the recession that it was the intention of the church to dedicate the strip of six feet to the public use, a subsequent owner cannot claim damages from the city because, under an ordinance passed after the recession, the street line was moved back five feet and owners were forbidden in re-erecting buildings to build beyond that line.    The owner may, however, resume possession of one foot of the strip; but as to the remaining five feet the ordinance took nothing from him to which he ever had title.

Argued Jan. 26, 1905.    Appeal, No. 207, Jan. T., 1904, by plaintiff, from order of C. P. No. 4, Phila. Co., June T., 1902, No. 1088, sustaining exceptions to report of referee in case of William F. Forsythe to use of Anthony M. Zane, to use of Holstein DeHaven v. Philadelphia.    Before MITCHELL, C. J., FELL, BROWN, MESTREZAT and ELKIN, JJ.    Affirmed.

Appeal from jury of view.

Exceptions to report of John M. Scott, Esq., referee.

AUDENRIED, J., filed the following opinion :

The plaintiff owns a large lot of ground on the northwest corner of Fifteenth and Chestnut streets, in the city of Philadelphia.

This is described by his deed as fronting on Chestnut street, as originally laid out, i. e., of the width of fifty feet.    In 1885, under authority bestowed by an ordinance of the city, the bureau of surveys increased the width of Chestnut street, as laid out on the city plan, to sixty feet, and shifted its north

line five feet further north than it had originally been located. Thenceforth it was unlawful for the owners of land abutting on Chestnut street to erect any new structure to the south of the line thus established.

In 1902 the plaintiff built upon his land a large office building. The south wall of this edifice he was under the ordinance and the action of the bureau of surveys above referred to, obliged to set on the new street line thereby established, thus losing, it is claimed, the use of a strip of land five feet wide running westward from Fifteenth street across the entire front of his lot between the present building line and that originally fixed.

On petition of the plaintiff the court of quarter sessions appointed a jury of view to assess the damages which he claimed he had sustained by the widening of Chestnut street in front of his property, and upon his appeal to this court from the jury's award, the matter was referred, by agreement, to John M. Scott, Esq., for consideration. The case now comes before the court upon the exceptions of the city of Philadelphia to the referee's report, by which the plaintiff was awarded as damages the sum of $49,952.50.

The exceptions filed raise four questions, viz. : First, whether the strip of ground between the present north line of Chestnut street and the north line of that street as laid out originally on the city plan, extending across the plaintiff's entire south front, was not dedicated to the public use for street purposes forever by one of the plaintiff's predecessors in title; second, whether, in estimating the effect of the widening of Chestnut street on the plaintiff's land, the referee should not have considered, in connection with the lot whose title is vested in him, but which he holds for a party of investors alluded to in the report as the Boston syndicate, the lot of ground held for the same syndicate by another trustee, which bounds the plaintiff's land on the north and with it originally formed one parcel; third, whether in considering the plaintiff's injury the referee applied the proper measure of damages; fourth, whether the award of damages to the plaintiff is not excessive in its amount.

Under the view which we feel constrained to adopt upon the first of the questions, it becomes unnecessary to decide, or even discuss, the others presented. We cannot but observe, how-

ever, in passing, that the amount of damages found for the plaintiff by the referee is out of all proportion to the verdicts sustained by this court in favor of the owners of other Chestnut street properties situated similarly to that involved in these proceedings and diminished in area by the widening of that street.

The facts found by the referee or established by the evidence submitted to him, so far as they bear upon the question of dedication, are as follows: When, in September, 1901, the plaintiff acquired title to this piece of land on the northwest corner of Fifteenth and Chestnut streets, described as containing in front on Chestnut street, laid out fifty feet wide, 132 feet and extending in depth northward of that width along Fifteenth street 178 feet to Ranstead street; the land was the site of an old church built, approximately, in the middle of it, having an open space or yard in front of it and an open space on each side of it within the lot lines. The pavement along the north side of Chestnut street in front of this property was made of flagstones, which extended from the curb-line northward eighteen feet to a line approximately six feet north of what was the original north line of the street. Where the flagging ended there extended across the front of the lot from Fifteenth street to the west boundary a low, but massive, coping of granite. The surface of the lot to the north of this coping was elevated three feet or more above the level of the footwalk on Chestnut street, and was flush with the top of the coping. Access to the churchyard was afforded by steps leading up from the Chestnut street sidewalk, but not projecting beyond the line of the coping.

Prior to April, 1881, this lot of ground was inclosed by a high brick wall, which, along its Chestnut street front, was built upon the original north line of that street. The wall projected into Chestnut street beyond the line upon which the front walls of all the buildings on the north side of Chestnut street between Fifteenth and Sixteenth streets were set. Most, if not all, of the lots lying to the west of the property were subject to a restriction which prevented the erection of any structure thereon within six feet of the original north line of the street.

At the date last referred to the possibilities of this part of

Chestnut street as a locality for shops and retail stores were becoming recognized, and owners and dealers in real estate anticipated a great rise in the value of property in this vicinity. From these expectations, however, it seemed that the properties on the north side of Chestnut street between Fifteenth and Sixteenth streets must be excluded. The projection of the churchyard beyond the fronts of the houses to the west of it threw those structures into the background, while the narrow footwalk in front of the church property and the unattractive expanse of brick wall which it presented to passersby discouraged all hopes of their development for business purposes.

The land with which we are now concerned was then owned by the rector, churchwarden and vestrymen of the Church of the Epiphany. Whether or not that corporation shared in the wishes of its neighbors for the adaptation of the vicinity to business purposes with a view to an advantageous sale of its property such as was subsequently effected, it appears to have been willing to remove what everybody then regarded as the drawbacks of the neighborhood. It certainly had the widening of the street in front of the church in contemplation as early as October, 1880, for, on the twelfth of that month, its vestry authorized its warden and secretary to agree " to restrict the front line of the church " to that of the other properties in the block, provided that the neighbors would contribute $250 toward the cost of setting back the wall. The agreement thus authorized, however, was not entered into owing to the unexpected cost of moving that wall and paving the footway.

On March 21, 1881, the councils of Philadelphia, by an ordinance which recited that a voluntary recession had been made by many of the owners of property on the north side of Chestnut street between Fifteenth and Sixteenth streets with a view to widening that street, and that its widening should be legally established, authorized the department of surveys to widen Chestnut street, between the streets named, on the city plan to conform to the house line by adding to it on its north side a strip six feet wide, so that its new north line should lie thirty-one feet north of its former center line, provided that there should be no expense involved to the city thereby, and that the benefits assessed should amount to a sum equal to the damages awarded. On April 19, 1881, the vestry

of the Church of the Epiphany appointed a committee to take charge of the resetting of the front line of the church, provided that a certain sum should be contributed therefor by the owners west of the church. Four days later this committee let the contract for the removal of the front wall of the church, the flagging of the Chestnut street sidewalk, and the erection of a granite coping upon the line of the fronts of the buildings to the west, and reported to the vestry one month subsequent that certain moneys had been subscribed by the neighboring owners for setting back the front line of the church. On July 27, 1881, the work contracted for was completed, and on January 3, 1882, the committee in charge of it reported to the vestry that the old wall and railing had been replaced by a new granite coping on the new building line, and that, owing to the energy of Mr. George M. Connarroe, to whom was largely due the passage of the ordinance establishing the new building line on the north side of Chestnut street from Fifteenth street to Sixteenth street, the neighboring property owners had contributed to cover the expense, because they believed themselves benefited by the improvement and widening.

On these facts the referee finds that the city had failed to establish a dedication by the Church of the Epiphany of the six-foot strip along the south end of its lot to public use for street purposes, basing this opinion on the proposition that " dedication to the public of all or part of an alleged highway is always a question of intention, and when the circumstances of an owner building from the regular street line instead of on it can be referred to a matter connected with his own interest or convenience, there is no just room for inferring any intention inconsistent with the continued right of private domain."

This proposition of law, quoted by the referee from the opinion of the court in Biddle v. Ash, 2 Ashmead, 211, is undoubtedly sound, but we are unable to agree in the conclusions to support which he cites it. The principle has been misapplied to the facts of the case through what seems to be a misunderstanding of its true scope.

All that the rule referred to means is that the effect of the physical opening of land to public use as evidence of an intent on the part of its owner to abandon or dedicate it permanently to the public is annulled by the presence of private purposes

of his own, with which such an opening is consistent.    The courts have never held that where the physical opening to use by the public can be explained on the ground of the owner's private convenience or advantage his purpose to dedicate to the public may not be established by other evidence, as, for example, by his deed or by his contemporaneous declarations. To put a concrete illustration of our meaning, we apprehend that if the owner of a lot builds back from the street line saying that he throws the space between that line and his house front into the street for public use, it is impossible to escape from the conclusion that he intends to make a dedication of the strip, even though it may be that without such a recession the construction of his front steps would be impossible, in view of municipal regulations forbidding their protrusion beyond the established building line.    In Bornot v. Bonschur, 202 Pa. 463, a "throwing out" of land under such circumstances was treated by the Supreme Court as a dedication of the excluded area to public use as part of Chestnut street.

In the case before us the referee, finding that the setting back of its south boundary wall to the line of the fronts of the buildings to the west and the erection on that line of a low granite coping instead of the brick wall, was not inconsistent with a purpose on the part of its vestry to beautify and improve the church property, decides, apparently on that ground alone, that the Church of the Epiphany had no intention to dedicate permanently to public use the strip of land left to the south of the coping.    In our opinion, he should have taken into consideration as bearing upon the question of the intention of the church :

1. The fact that not only was the six-foot strip left outside of the granite coping, but its grade was brought into conformity with that of the Chestnut street sidewalk; and its surface was so paved with flagstones as to become an integral part of the footway.

2. The approbation expressed by the committee of the church vestry in its report of January 3, 1882, of the efforts of Mr. Connarroe to secure the passage of the ordinance of 1881, for the establishment of the new building line on the north side of Chestnut street.

3. The negotiations carried on by the vestry, through its

committees, with the neighbors, both prior to and immediately after the passage of the ordinance of 1881, for the accomplishment of the very purposes of that ordinance, viz.: the widening of Chestnut street, between Fifteenth street and Sixteenth street, at the expense of the neighbors and without cost to the city of Philadelphia.

4. The fact that the cost of the changes along the south end of the churchyard was to a great extent defrayed from the contributions of the neighboring property owners, and the unlikelihood that such contributions would have been forthcoming in face of an intention on the part of the church to grant the public a mere license over the six-foot strip, revocable at will.

5. The language of the resolutions of the church vestry and the reports of its committees as recorded, repeated use being made of such expressions as " the restricting of the front line," " the resetting of the front line," " the setting back of the front line " and " the new granite coping on the new building line."

6. The fact that the improvement of the vicinity of the church and its development for business purposes depended on the permanent widening of Chestnut street, and that the church corporation was interested proportionately with its neighbors in securing such an improvement and development.

From these considerations, it is quite manifest that it was the intention of the vestry of the church to abandon forever to public use as part of Chestnut street the strip of ground lying to the south of the coping set up in 1881. Doubtless its members regarded the ordinance passed in that year as effective to widen Chestnut street to the line of the houses west of the church property, and they made haste to comply with its provisions. It would be difficult to account for the practical coincidence of the enactment of that ordinance and the letting of the contract for setting back the boundary wall to " the new building line " on any other theory. It is of no consequence that they may have been in error as to the effect of the ordinance. They waived the supposed right of the church to compensation for the land they threw out into the street, in view of the contributions of the neighbors toward the cost of the coping and flagging; and they abandoned the land to public use with no intention ever to resume possession of it.

The conclusion that we have thus reached as to the intention of the church authorities as to the strip thus excluded from the churchyard is not shaken by the fact that, in December, 1896, when the church property was conveyed to Mr. Wanamaker, his deed described the lot as fronting on Chestnut street "fifty feet wide," and as still having its original depth of 178 feet to Ranstead street. The language of the description of the property in this deed is significant only of the notorious reverence of all scriveners for old descriptions, and their inclination to follow them with superstitious accuracy, verbatim et literatim.

Nor can we see any force in the argument that it is unlikely that, in 1881, the Church of the Epiphany dedicated the ground in question to public use, because, during all the fifteen years which elapsed before the property was sold to Mr. Wanamaker, no effort was made by its officers to secure the correction on the assessment lists of the city of the description under which it was always assessed by the change of its depth as thereon given from 178 feet to 172 feet. During the whole of that period the church property was exempt from taxation, so that the accuracy of its description for assessment purposes and the correctness of its assessed valuation were matters of no importance whatever to the corporation; and it is entirely unlikely that any of its officers knew just how the property was entered on the tax books. With the acts or omissions of subsequent owners in relation to this matter we are not concerned. It is the question whether, in 1881, the rector, church-warden and vestrymen of the Church of Epiphany intended to dedicate to public use this strip of land that we have to deal with; and on that question the acts of their successors in the title can throw no light whatever.

We conclude, therefore, that the strip of land for whose taking by the city the plaintiff asks to be compensated forms a part of the six-foot strip which was, in 1881, dedicated to public use as part of Chestnut street by the Church of the Epiphany, under which the plaintiff claims; and that, while, under Bornot v. Bonschur, 202 Pa. 463, the plaintiff may resume possession of the northern portion of that strip (i. e., of a strip of the width of one foot, extending across his entire front), the city ordinance of 1884 takes from him nothing to which he is,

or ever was, entitled, when it prevents him from building to the south side of the north line of Chestnut street as now established.

Having lost nothing, the plaintiff can have no recovery. We sustain the 25th, 26th, 27th, 29th, 34th, 37th, 42d, 44th, 45th, 47th, 48th, 49th, 50th, 51st, 55th, 61st and 63d exceptions, reverse the finding of the referee and enter judgment for the defendant.

*Errors assigned* were in sustaining exceptions to the referee's report.

*E. O. Michener*, with him *J. Quincy Hunsicker*, for appellant, cited: Ferdinando v. Scranton, 190 Pa. 321 ; Gowen v. The Phila. Exchange Co., 5 W. & S. 141, 144; Neill v. Gallagher, 10 Phila. 172; Root v. Commonwealth, 98 Pa. 170, 176; Griffin's Appeal, 109 Pa. 150, 155 ; Commonwealth v. P. &. R. R. R. Co., 135 Pa. 256; Weiss v. South Bethlehem Borough, 136 Pa. 294; Duncan v. Hanbest, 2 Brewster, 362; Waggeman v. North Peoria, 155 Ill. 545 (40 N. E. Repr. 485) ; Morrison v. Marquardt, 24 Iowa, 35 ; Com. v. Baldwin, 11 W. N. C. 446.

*John H. Maurer*, assistant city solicitor, with him *John L. Kinsey*, city solicitor, for appellee, cited: Bornot v. Bonschur, 202 Pa. 463 ; Griffin's App., 109 Pa. 150 ; Spring v. Pittsburg, 204 Pa. 530 ; Waters v. Philadelphia, 208 Pa. 189 ; Pittsburg, etc., Ry. Co. v. Dunn, 56 Pa. 280 ; Commonwealth v. Shoemaker, 14 Pa. Superior Ct. 194 ; Witman v. Smeltzer, 16 Pa. Superior Ct. 285 ; Richardson v. City of McKeesport, 18 Pa. Superior Ct. 199.

PER CURIAM, March 6, 1905 :

The judgment is affirmed on the opinion of the court below.